Minute Order Form (01/95)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C3514 | DATE | 8/20/03 |
| CASE TITLE | GREEN V. AZTAR CORPORATION, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendants' Motion to Dismiss (Doc. #18)

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]. Defendants' Motion to Dismiss (Doc. #18) is **granted**. Enter memorandum and opinion. All other pending motions and dates are terminated as moot.

(11) ☐ [For further detail see order on the reverse side of the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | AUG 2 2 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 32 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| JHC | courtroom deputy's initials | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER GREEN, | ) | **DOCKETED** |
| Plaintiff, | ) ) ) | AUG 2 2 2003 |
| v. | ) ) | No. 02 C 3514 |
| AZTAR CORPORATION, JONATHAN SWAIN and RONALD H. ANTOS, | ) ) ) | The Honorable William J. Hibbler |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

In this RICO action, defendants Aztar Corporation and Jonathan Swain have filed a motion to dismiss the plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure. For the reasons below, the defendants' motion is **granted.**

## BACKGROUND

This matter arises out of debts incurred by plaintiff Christopher Green while gambling at the Las Vegas-based Tropicana Casino. The Tropicana is owned by defendant Aztar Corporation and managed by defendant Jonathan Swain. Green began gambling at the Tropicana after he won $12 million in the Illinois Big Game Lottery in 1988. Green also used his lottery winnings to place various bets, some illegal, through an alleged Chicago-based agent of the Tropicana, defendant Ronald Antos.

As his winnings dwindled and his debts increased, Tropicana would extend Green lines of

1

credit with the understanding that Green would repay his debts with future earnings. One such instance allegedly occurred in the spring of 1999. Green claims that he entered into a credit extension agreement with Tropicana's credit manager, Alex Montebello, wherein Green agreed to repay money he owed Tropicana. Also that spring, Green claims that he met with Swain to discuss repayment of an additional $400,000 he owed the casino. During the meeting, Green contends that Swain promised to forgive his debts altogether if Green refused to cooperate with a pending FBI investigation of Antos' illegal gambling operations.

When Green did not comply with Swain's request, Green alleges that Antos threatened Green and his family with bodily harm. Green also alleges that defendants began filing civil lawsuits against Green for passing Tropicana bad checks. Green further claims that defendants persuaded the Las Vegas District Attorney to file criminal charges against Antos for drawing and passing checks with intent to defraud. As a result, Green was arrested and briefly held in a Chicago jail.

Green claims that defendants violated RICO by: 1) placing illegal bets on Green's behalf; 2) routinely extending Green credit to place illegal bets; 3) accepting Green's checks knowing he had insufficient funds and then suing to enforce the checks; 4) offering to forgive Green's debts if he refused to cooperate with an FBI investigation; 5) threatening Green and his family. Green alleges that defendants' RICO violations caused him to suffer trauma, humiliation, emotional distress, familial discord, and monetary losses.

In response, defendants argue that Green lacks standing to bring a RICO action because he has failed to allege a compensable RICO injury or establish causation between Green's injuries and defendants' purported RICO violations. Defendants also argue that even if Green could

2

demonstrate RICO standing, Green fails to state a cause of action under RICO.

## STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all the well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002). If when viewed in the light most favorable to the plaintiff, the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. *See* Fed.R.Civ.P. 12(b)(6); *Gomez v. Illinois State Board of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987).

## ANALYSIS

The Court must first determine whether Green has pled sufficient facts to establish RICO standing. It is well established that a plaintiff must meet two basic requirements to bring a civil suit under RICO. First, the alleged injury must be to the plaintiff's *business or property*, and not personal in nature. *Schiffels v. Kemper Financial Services Inc.*, 978 F.2d 344, 353 (7th Cir. 1992), abrogated by *Beck v. Prupis*, 529 U.S. 494 (2000) (narrowing scope of a civil cause of action under RICO but leaving intact *Schiffels* determination regarding compensable injuries under RICO); *Rylewicz v. Beaton Services, Ltd.*, 888 F.2d 1175, 1180 (7th Cir. 1989). Second, the defendant's alleged acts in violation of RICO must have *proximately caused* the plaintiff's injury. *Holmes v. Securities Investment Protection Corp.*, 503 U.S. 258 (1992). Defendants argue that Green's alleged injuries are not compensable under RICO because they are not to his "business or property." Defendants also argue that Green cannot allege proximate causation because Green's gambling, not defendants' alleged RICO violations, caused his injuries.

    a.    *Injury to "business or property"*

Only injuries to "business or property" are compensable under RICO. 18 U.S.C. §

3

1964(c). Green's injuries fall into three categories. First, Green claims that he suffered "trauma, humiliation, emotional distress, and familial discord" from defendants' activities. Next, Green alleges non-specific personal injuries resulting from defendants' credit extension policies and bullying collection efforts. Finally, it appears Green seeks reimbursement for various illegal gambling losses. None of these injuries constitute "injury to business or property."

Regarding the first category of alleged injury, the Seventh Circuit has stated that "injury to business or property" does not include personal injuries such as embarrassment, humiliation, and emotional distress even if those personal injuries resulted in a pecuniary loss. *Schiffels*, 978 F.2d at 353; *see also Berg v. First State Ins. Co.*, 915 F.2d 460, 464 (9th Cir. 1990). Regarding Green's second category of injury, a private plaintiff cannot recover under RICO for injuries resulting from extortion or intimidation, including the economic aspects of such personal injuries. *Rylewicz v. Beaton Services, Ltd.* 888 F.2d 1175, 1179 (7th Cir. 1989). Lastly, losses associated with the final category of alleged injury – Green's gambling debts - are similarly unrecoverable. Courts consistently hold that private plaintiffs alleging injuries resulting from their own gambling cannot establish "injury to business or property" under RICO. *See Chaset v. Fleer/Skybox International, LP*, 300 F.3d 1083, 1087 (9th Cir. 2002); *Price v. Pinnacle Brand, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998); *Major League Baseball Props., Inc. v. Price*, 105 F.Supp.2d 46 (E.D.N.Y 2000). The reasoning of these courts makes good sense. When Green decided to gamble, he paid for (and received) the opportunity to win. When that chance did not pay off, it did not mean that he suffered a RICO property loss however.[1] Green's disappointment at not winning his bets does

---

[1] Green appears to mistakenly equate property *interest* (i.e. the consideration tendered during a gambling act) with property *injury* (i.e. lost opportunity to win as would be the case, for example, with a "rigged" or fraudulent gambling mechanism).

4

not constitute an "injury to property" sufficient to confer RICO standing. *Chaset*, 300 F.3d at at 1087; *Price*, 138 F.3d at 607. Thus, as Green has failed to allege a compensable injury, his RICO claims cannot proceed.

    b.    *Proximate causation*

Even if Green's gambling losses could be classified as injuries to "business or property," his losses are nonetheless unrecoverable because Green cannot demonstrate that these injuries were proximately caused by the defendants' alleged RICO violations. A plaintiff can only recover for those damages *directly caused* by a defendant's RICO violations. *Holmes*, 503 U.S. at 259. At least two circuits have found that a plaintiff cannot establish proximate cause where the plaintiff voluntarily and knowingly engages in the very RICO activities from which it later claims injury. *See In Re Mastercard*, 313 F.3d 257 (5th Cir. 2002) (no proximate causation for group of internet gamblers against credit card company that provided them credit to gamble online); *see also Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173 (3rd Cir. 2000) (voluntary participation in illegal but non-fraudulent gambling not compensable as plaintiff "can avoid any injury simply by walking away.").

Here, Green's knowing and voluntary gambling interrupted the causal chain between defendants' alleged RICO violations and plaintiff's injuries. Defendants' cannot be held responsible for causing Green to loose his money. Nothing in Green's complaint suggests that he was anything but an independent actor who voluntarily chose to gamble away his lottery winnings. Green cannot use RICO to avoid meeting obligations he voluntarily took on. *See In re Mastercard*, 313 F.3d at 264. Also, Green does allege that defendants lied to him about his bets or that he was swindled or defrauded out of money. Rather, all Green alleges is that he made a conscious decision to borrow money from and place bets with the defendants. Green's gambling

5

losses are nothing more than self-inflicted wounds. Accordingly, Green cannot establish that defendants proximately caused his injuries. As Green fails to meet RICO's standing requirements, his complaint must be dismissed.[2]

## CONCLUSION

The Court finds that Green lacks standing to bring a RICO claim because Green's injuries are not compensable under RICO and Green has not demonstrated that defendants' activities proximately caused his injuries. Defendants' motion to dismiss Green's amended complaint is therefore granted.

IT IS SO ORDERED.

_8/20/03_

William J. Hibbler
United States District Court

---

[2]Because the Court concludes that Green has failed to allege RICO standing, the Court need not offer any opinion regarding whether Green has sufficiently plead the elements of a RICO claim.

6